**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 3, 2026**

# In the Court of Appeals of Georgia

A25A1673. MINTER-KING v. THE STATE.

BARNES, Presiding Judge.

This Court granted Mikai Minter-King's application for interlocutory review of the trial court's order denying his motion to enforce a plea agreement. In the ensuing appeal, Minter-King contends that he is entitled to the enforcement of a plea agreement negotiated with an assistant district attorney ("ADA"), who was no longer in that position at the time of the plea hearing. Because he accepted the earlier plea agreement, Minter-King asserts that it was enforceable and could not be altered by a new ADA to include new terms. Upon review, and for the reasons that follow, we reverse the trial court's judgment.

The facts relevant to this appeal establish that Minter-King was charged with four counts of participating in a criminal street gang, two counts of aggravated assault, and one count each of armed robbery, criminal attempt, and possession of a firearm during the commission of a felony. After ongoing discussions with Minter-King about a plea deal, on January 31, 2025, the prosecutor assigned to the case emailed Minter-King's counsel with a written offer of a plea agreement "in line with what you previously asked me for."[1] Per the terms of the offer, which noted that "[t]he Office of the District Attorney reserve[d] the right to modify or revoke" before acceptance, in exchange for Minter-King's guilty plea to robbery, the State would recommend a sentence of ten years to serve three and would nolle pros the remaining charges. Of relevance to this case, as a condition of the plea, Minter-King was required to provide truthful testimony in any proceedings related to the case.[2] The email further reflected that the plea offer would expire on February 11, 2025. However, Minter-King's

---

[1] Although the plea offer was dated January 31, 2024, the prosecutor who offered the plea testified at the hearing on the motion to enforce the plea offer that the correct date was January 31, 2025.

[2] Other conditions of the plea offer included, among other things, Paulding County special gang conditions, Fourth Amendment waiver, avoid alcohol and drug use, and banishment from Paulding County.

counsel emailed the prosecutor that same day that Minter-King "is willing to accept your offer of 10 do 3 on robbery with the conditions you listed." In the email, Minter-King's counsel also clarified that the "armed robbery [noted on the plea offer] is to be reduced to robbery," and asked if the plea hearing could be held on February 11, 2025. By return email later that evening, the prosecutor responded, "[y]es I definitely meant robbery. Sorry about that. Sure we can do the plea on 2/11!"

When Minter-King appeared at what was to be the plea hearing, a new prosecutor sought to have Minter-King give a proffer on the record as to how he would testify if called to do so in a later proceeding. Minter-King did not agree, and the State refused to go through with the plea agreement.

Minter-King filed a motion, as amended, to enforce the plea agreement. At the subsequent hearing on the motion, the former prosecutor testified that she and defense counsel had discussed Minter-King making a proffer, but they had never agreed to a proffer; instead, defense counsel had later relayed to the prosecutor what she believed Minter-King would testify to and, on that basis, she made the plea offer. She agreed that the written plea offer was the "extent of [the] deal," and that there

was no agreement that Minter-King had to make statements beforehand as part of the plea agreement.

In denying the motion, the trial court found that the parties never reached an agreement as to whether Minter-King would make a proffer during the plea. In its order, the trial court relied on the holding in *Campbell v. State*, 320 Ga. 333, 356 (7) (b) (907 SE2d 871) (2024), where similarly the

> [d]efendant and the State had not settled on all the terms of the agreement, specifically as those terms pertain to the Defendant's proffer. This [c]ourt also concludes that where a reduction or dismissal of charges is premised upon the truthful testimony of a defendant, the terms of that defendant's proffer are essential to the agreement.

Thus, the trial court found that because Minter-King and the State had not settled on all terms of the plea agreement, there was no enforceable plea agreement.

Whether a plea agreement is enforceable is a question of law for the court, and this Court owes no deference to the trial court's conclusion. *Syms v. State*, 331 Ga. App. 225, 227 (770 SE2d 305) (2015). "[A] plea bargain agreement is a contract under Georgia law which binds both the prosecutor and defendant." *State v. Harper*, 271 Ga. App. 761, 762 (1) (610 SE2d 699) (2005) (quotation marks omitted). As such, "rules

4

of contract often provide the appropriate framework for addressing disputes" although "we avoid slavish adherence to civil contract principles." *Syms*, 331 Ga. App. at 227 (citation and punctuation omitted). Key to the "principles of contract law is that a contract is enforceable as long as the parties have reached agreement on the essential terms, and the absence of agreement on nonessential terms does not render the agreement unenforceable." Id. (quotation marks omitted). See generally OCGA § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.").

In *Campbell* the Supreme Court of Georgia rejected the defendant's claim that the State modified its plea offer after he accepted it because the evidence indicated that the defendant and the State had not settled on the terms of the agreement. 320 Ga. at 356 (7) (b). Additionally, "the parties never presented a plea agreement to the trial court or represented that they had reached such an agreement regarding the terms of any plea agreement." Id.

Unlike *Campbell,* in this case there is evidence of a written plea agreement that the State sent to Minter-King, which Minter-King accepted. There is also evidence

that, although there were discussions between the parties about a possible proffer, the former prosecutor testified that after discussing Minter-King's anticipated testimony, they reached an agreement and she offered a written plea agreement that only required Minter-King to testify truthfully rather than provide a formal proffer. The written plea offer made no mention of a proffer or the scope of his testimony. If, as the State argues, a proffer was critical, then the State was obligated to have secured the proffer or an agreement as to the proffer before it tendered a written plea agreement.

"Public policy and the great ends of justice" generally require the enforcement of plea agreements between prosecutors and defendants. *Glover v. State*, 258 Ga. App. 527, 529 (574 SE2d 565) (2002) (citation marks omitted). Importantly, plea agreements are generally binding on successive prosecutors. *State v. Hanson*, 249 Ga. 739, 746 (4) (295 SE2d 297) (1982) ("The integrity of the office of the district attorney demands that promises made by the district attorney are binding on his successor to the extent that they are valid and enforceable."). Because in this case an agreement as to terms was clearly made, the trial court erred in denying Minter-King's motion to enforce. See *Syms*, 331 Ga. App. at 227-28 (where State and defendant agreed to essential term of sentence to be served, the fact that agreement was silent

as to specific sentences for each charge did not render agreement unenforceable).

Thus, the trial court erred in denying Minter-King's motion to enforce the plea agreement.

*Judgment reversed. Brown, C. J., and Watkins, J., concur.*