LAWSON, District Judge.
Concurring in the judgment. The court today finds that Dylan Marshall’s sentence does not violate the Eighth Amendment because chronologically he is an adult, and therefore he is not afforded the protection given juveniles under the Supreme Court’s juvenile sentencing cases'. The district court found that Marshall was a juvenile in all material respects except for his chrono *502 logical age — a finding that the majority “do[es] not reject.” Because sentencing is an “individualized” task, Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and Marshall is not seeking a categorical ban on mandatory minimum sentences for all juvenile offenders, I do not find that his chronological age presents an obstacle to the relief he seeks. Nor do I share the majority’s concern that a sentencing regime would be unmanageable if courts look behind chronological age on a case-by-case basis to assess those factors that render juveniles “constitutionally different from adults for purposes of sentencing.” Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2464,183 L.Ed.2d 407 (2012). Nonetheless, as inappropriate, counterproductive, and unnecessary the five-year custody sentence imposed on Marshall might be in this case, it is not “grossly disproportionate” to the offense and therefore neither a cruel nor unusual form of punishment for juveniles in the American criminal justice system. Therefore, I must reluctantly concur in the judgment of the court affirming the sentence as acceptable under the Eighth Amendment.
I.
The Supreme Court has on several occasions explicated the reasons why juveniles are different from adults when it comes to imposing criminal punishment. First, their immaturity and “underdeveloped sense of responsibility” is said to lead to “recklessness, impulsivity, and heedless risk-taking.” Miller, 132 S.Ct. at 2464 (quoting Graham v. Florida, 560 U.S. 48, 67-68, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010), and Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)). Second, children are thought to be more vulnerable to negative peer pressure and other influences and “lack the ability to extricate themselves from horrific, crime-producing settings.” Ibid. Third, because a child’s character is still developing, “his traits are ‘less fixed’ and his actions less likely to be ‘evidence of irretrievable] deprav[ity].’ ” Ibid. (quoting Roper, 543 U.S. at 570, 125 S.Ct. 1183).
These features that distinguish juveniles from adults have prompted the Supreme Court to impose limits under the authority of the Eighth Amendment upon specific kinds of sentences and sentencing practices for juvenile offenders. For instance, the Court has imposed an absolute bar to the imposition of the death penalty upon defendants under age 18. Roper, 543 U.S. at 575, 125 S.Ct. 1183. Similarly, the Court has held unconstitutional sentences of life without parole for juvenile offenders who commit nonhomicide offenses. Graham, 130 S.Ct. at 2034. And the mandatory imposition of a life-without-parole sentence upon a juvenile for any crime, including homicide, contravenes the Eighth Amendment. Miller, 132 S.Ct. at 2469.
The district court found that Marshall exhibited all the traits identified by the Supreme Court in its juvenile sentencing cases. The uncontested evidence established that Marshall suffered from human growth hormone deficiency that was not diagnosed until 2005. That led to a lower-than-average intelligence quotient and “an estimated mental age of 15.5 years.” United States v. Marshall, 870 F.Supp.2d 489, 498 (N.D.Ohio 2012). The district court concluded that “at the time of the crime [Marshall] was, and should be characterized for sentencing as, a developmentally immature teenager lacking the ability to appreciate the illegality of child pornography and to control his viewing of easily accessible internet content.” Ibid.
The majority does not dispute any of those points. It simply disregards them as irrelevant because of Marshall’s chrono *503 logical age. But that is incorrect. The Court in Miller recognized the obvious fact that these features of adolescence do not instantly disappear upon the arrival of one’s eighteenth birthday, which presumably prompted the Court to observe that “ ‘youth is more than a chronological fact.’ ” Id. at 2467 (quoting Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)).
A defendant’s youth, with its varying characteristics of immaturity, vulnerability, and less-than-fully-developed character, is always a factor in determining an appropriate sentence. It is plain that “children are constitutionally different from adults” not because they are under 18 years of age, but because they have not attained the level of maturity that characterizes adult mentation. See Miller, 132 S.Ct. at 2464-65. The Supreme Court’s use of chronological age does not diminish that precept. Rather, chronological age has been used merely as a bright line to define categorical prohibitions on the imposition of certain kinds of sentences deemed disproportionate as a matter of constitutional law. The passage from Roper quoted by the majority is a case in point. In “draw[ing] the line” at age 18 for death penalty eligibility (raising it from the previous bright-line limit of age 16, established in Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988)), the Court defined a class of individuals for whom the death penalty is automatically deemed disproportionate and therefore unconstitutional. That pronouncement does not justify the converse proposition, that the death penalty is constitutional for all those over 18 years old. And it does not render immaterial for an Eighth Amendment analysis the fact that a defendant has the mental characteristics of a juvenile.
Nor is the Supreme Court’s categorical bar to certain types of sentences limited to those who are chronological juveniles, that is, under 18 years old. In Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the Court found that imposing the death penalty on mentally retarded defendants is unconstitutional. In reaching that conclusion, the Court identified the same features that diminished the defendant’s culpability as in the juvenile cases. Id. at 318, 122 S.Ct. 2242 (“Because of their impairments, ... [mentally retarded persons], by definition ... have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others.”). In Atkins, the defendant was an adult, but he had the “mental age” of between 9 and 12 years old. Id. at 310, 122 S.Ct. 2242. Indeed, the Court, in essence, has equated diminished mental capabilities of juveniles and mentally retarded persons as the central justification for its categorical restrictions on types of sentences for classes of individuals: both juveniles and mentally retarded individuals are “categorically less culpable than the average criminal.” Roper, 543 U.S. at 567, 125 S.Ct. 1183 (quoting Atkins, 536 U.S. at 316, 122 S.Ct. 2242).
Marshall does not seek a categorical bar to the imposition of mandatory minimum sentences upon juvenile offenders, of which he counts himself as one. Rather, he argues that the mandatory minimum sentence is unconstitutional because it prevented the district court from considering the developmental features that render him a juvenile in all material respects, and therefore his sentence is excessive when measured against his diminished culpability. I do not believe that chronological age plays a determining role in that argument, *504 and therefore I cannot join the court’s opinion, which holds otherwise.
II.
The question presented is whether the five-year prison sentence mandated by the statute in this case violates the Eighth Amendment when imposed upon Marshall, a virtual juvenile. Marshall argues that under all the circumstances, the sentence is excessive. The Eighth Amendment states that “cruel and unusual punishments [shall not be] inflicted.” Sentences that are “excessive” violate that prohibition. Atkins, 536 U.S. at 311, 122 S.Ct. 2242. A sentence is excessive if it is disproportionate, that is, if it contravenes “the basic ‘precept of justice that punishment for crime should be graduated and proportioned to [the] offense.’ ” Roper, 543 U.S. at 560, 125 S.Ct. 1183 (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). Notably, in Miller, the Court added that a sentence must be proportionate “to both the offender and the offense.” Miller, 132 S.Ct. at 2463.
But the proportionality principle found in the Eighth Amendment is not well defined when it comes to a term-of-years sentence. The Supreme Court has acknowledged “that [its] precedents in this area have not been a model of clarity.” Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). “Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow.” Ibid.
In Lockyer v. Andrade, the Supreme Court reversed the Ninth Circuit’s grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California’s “three strikes” law,- where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court noted that the “thicket” created by its jurisprudence consisted primarily of its decisions in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In Andrade’s state court proceedings, the California court observed that the proportionality rule set forth in Solem was cast into doubt by Harmelin and proceeded to analyze Andrade’s sentence under the approach taken in Rummel, where the Supreme Court rejected a claim that a life sentence imposed under Texas’s recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade’s sentence was not disproportionate. The Supreme Court held that the decision was not contrary to or an unreasonable application of federal law that was clearly established by the Supreme Court. Lockyer, 538 U.S. at 72-77, 123 S.Ct. 1166.
The Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. See Harmelin, 501 U.S. at 965, 111 S.Ct. 2680; Graham, 130 S.Ct. at 2021. As the Supreme Court observed in Lock-yer, it is generally recognized after Harmelin that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are “grossly disproportionate” to the crime. Lockyer, 538 U.S. at 72, 123 S.Ct. 1166 (citing Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring)); see also Graham, 130 S.Ct. at 2021 (reading Harmelin as stating “that the Eighth Amendment contains a ‘narrow *505 proportionality principle,’ that ‘does not require strict proportionality between crime and sentence’ but rather ‘forbids only extreme sentences that are “grossly disproportionate” to the crime’ ” (citations omitted)).
“Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.” Rummel, 445 U.S. at 272, 100 S.Ct. 1133. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel’s life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In Harmelin, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.
The Supreme Court overturned a life sentence in Solem on the ground that it was significantly disproportionate to Helm’s crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment without the possibility of parole for uttering a “no account” check for $100, and his prior felonies also were minor,- nonviolent crimes. By contrast, the Supreme Court reaffirmed Rummel and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony theft conviction. See Ewing v. California, 538 U.S. 11, 24-31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).
None of those cases involved juveniles. Nonetheless, the general approach to evaluating a proportionality challenge to a term-of-years sentence for both juveniles and adults calls first for “comparing the gravity of the offense and the severity of the sentence.” Graham, 130 S.Ct. at 2022. Second, the court must then “compare the defendant’s sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.” Ibid. “If this comparative analysis ‘validate^] an initial judgment that [the] sentence is grossly disproportionate,’ the sentence is cruel and unusual.” Ibid. (quoting Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680).
The gravity of offenses dealing with child pornography cannot be overestimated. This court and others have documented well the devastating and long-lasting effects that the creation and dissemination of child pornography have on its victims, inflicting emotional, physical, and psychological damage, sometimes permanently. See United States v. Bistline, 665 F.3d 758, 766 (6th Cir.2012); see also New York v. Ferber, 458 U.S. 747, 757-59 & nn. 8-10, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Neither the district court nor the defendant here suggests otherwise. See United States v. Marshall, 870 F.Supp.2d at 493.
In light of the sentences found constitutional in Lockyer, Harmelin, Rummel, and Ewing, it is difficult to conclude that a five-year sentence for the serious crime of receiving child pornography supports an inference of gross disproportionality. The Second Circuit concluded that no such inference arises from the mandatory five-year sentence in a distribution-of-child-pornography case, and that reasoning conveniently applies here. United States v. Reingold, 731 F.3d 204, 218-19 (2d Cir.2013) (noting “the depicted sexual exploita *506 tion of an eight-year old on the distributed video” in that ease and concluding “that the crime of conviction here is a more serious offense than the golf club and videotape thefts in Ewing and Lockyer, for which the Supreme Court upheld prison sentences of 25 years to life”).
But Marshall argues that the five-year sentence is disproportionate to him because its mandatory nature prevents the court from considering his individual characteristics as a virtual juvenile. After all, he says, the Supreme Court did not hold that a life-without-parole sentence for juvenile murderers was unconstitutional per se in Miller v. Alabama; it “mandate[d] only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” Miller, 132 S.Ct. at 2471.
I do not believe that Miller can be read to prohibit mandatory term-of-years sentences for juveniles across the board. It is true that the Miller court did distinguish the statement in Harmelin that “a sentence which is not otherwise cruel and unusual” does not “becom[e] so simply because it is ‘mandatory,’ ” Harmelin, 501 U.S. at 995, 111 S.Ct. 2680, 111 S.Ct. 2680, by observing that Harmelin “had nothing to do with children and did not purport to apply its holding to the sentencing of juvenile offenders.” Miller, 132 S.Ct. at 2470. However, the Miller court’s main premise was that “youth matters for purposes of meting out the law’s most serious punishments,” id. at 2471 (emphasis added)— meaning death and life without parole— and therefore the failure to consider individual characteristics in those types of cases is unconstitutional. See id. at 2469 (“Although we do not foreclose a sentencer’s ability to [impose a life-without-parole] judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” (emphasis added)). Applying that reasoning to a five-year mandatory sentence is too great a span to be supported by the Court’s rationale.
The five-year sentence in this case, which almost certainly is greater than necessary to achieve any rational sentencing objectives, cannot be considered extreme in the greater context of juvenile punishment. There are hundreds of cases in which youthful offenders have been sentenced to much longer prison terms for serious crimes. See, e.g., Lelenoa v. Uribe, No. 11-6522, 2013 WL 569598 (C.D.Cal. Feb. 10, 2013) (denying an Eighth Amendment habeas claim where petitioner was sentenced to 23 years total for five armed robberies committed when he was a juvenile); Young v. State, No. 01-09-00790, - S.W.3d -, 2012 WL 668927 (Tex. App. Mar. 1, 2012) (holding that a sentence of 15 years for aggravated sexual assault involving a child under the age of 14 was not disproportionate where the defendant was 17 at the time of the crime); State v. Pettigrew, 204 N.C.App. 248, 693 S.E.2d 698 (2010) (holding that a sentence of 32 to 40 years was not disproportionate for convictions of sexual assault of a minor stemming from defendant’s frequent abuse of his younger relative' when defendant was between 11 and 16 years old); Cuvas v. State, 306 Ga.App. 679, 703 S.E.2d 116 (2010) (upholding a sentence of 10 years imprisonment for armed robbery where the defendant was 13 years old at the time of the crime); Stovall v. State, 05-95-01862, 1997 WL 459082 (Tex.App. Aug. 13, 1997) (holding that a sentence of 20 years for aggravated assault (the statutory maximum) was not disproportionate where the defendant was .15 at the time of the crime and had only a misdemeanor criminal record). Despite Marshall’s immaturity and juvenile-like characteristics, I cannot con- *507 elude that the five-year custody sentence is grossly disproportionate to the crime to which he pleaded guilty. Therefore, I concur in the court’s judgment affirming the sentence against Marshall’s Eighth Amendment challenge.
III.
Two more points deserve discussion. The district court found that a sentence of “60 months is excessive, unjust, and greater than necessary as applied to this Defendant.” Marshall, 870 F.Supp.2d at 499. Based on the record, it is difficult to quarrel with that conclusion. The injustice in this case results from the combination of the government’s decision to charge the defendant with receipt rather than possession of child pornography, and the rigidity of the mandatory minimum sentence— which divests the district court of discretion to consider individual characteristics when attempting to impose a sentence that is “sufficient, but not greater than necessary” to reflect the seriousness of the crime, achieve deterrence, protect the public, and address the defendant’s special needs. 18 U.S.C. § 3553(a)(1), (2).
A.
The crime of receiving child pornography is prohibited by 18 U.S.C. § 2252(a)(2); it is punishable by a sentence of at least five years and up to 20 years. Id. § 2252(b)(1). The crime of possessing child pornography is prohibited by 18 U.S.C. § 2252(a)(5); it is punishable by a sentence of up to 20 years (if the images involve prepubescent minors). There is no mandatory minimum sentence for possession. Id. § 2252(b)(2). The statutes do not define the terms “receipt” or “possession.” This court has stated, however, that “standing alone, the current statutory scheme makes no principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges.” United States v. Robinson, 669 F.3d 767, 776 n. 2 (6th Cir.2012); see also United States v. Dudeck, 657 F.3d 424, 429 (6th Cir.2011) (acknowledging that “ ‘[tjhese statutory provisions ... [are] materially identical.’ ”) (quoting United States v. Miller, 527 F.3d 54, 64 n. 10 (3d Cir.2008)).
Marshall contends that because there is no real difference between the crime of possession of child pornography and receipt of child pornography, save that the latter carries a mandatory minimum sentence, Congress unlawfully delegated what amounts to judicial sentencing authority to the executive branch. The majority rejects that argument, as it is obligated to do, because the prosecutor has broad discretion to select the charge to present to the grand jury. United States v. Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); see also Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). One might expect that the government would take great care when deciding to charge a crime that carries a mandatory minimum sentence, especially when an identical crime without a mandatory sentence is available and will serve the same penological goals. But the charging decision in this case was woefully uninformed and even irresponsible. Nonetheless, “an exercise of prosecutorial discretion cannot be successfully challenged merely on the ground that it is irrational or arbitrary; in the realm of prosecutorial charging decision's, only invidious discrimination is forbidden.” United States v. Moore, 543 F.3d 891, 900 (7th Cir.2008). Although the government’s judgment in this ease can be *508 questioned, there is no legal basis to second-guess the government’s choice of charges.
B.
Nor can the defendant prevail on his argument that the mandatory minimum sentence must yield to the parsimony provision in 18 U.S.C. § 3553(a), as the majority correctly states. This court’s precedents have established that a sentencing court’s determination that a mandatory sentence works an injustice is insufficient by itself to disregard the mandate. United States v. Cecil, 615 F.3d 678, 695 (6th Cir.2010) (declaring that “[wjhen a court and a mandatory minimum are in conflict, the minimum wins”). Furthermore, statutes mandating minimum sentences trump the more general command of section 3553(a). Ibid, (quoting United States v. Franklin, 499 F.3d 578, 585-86 (6th Cir.2007)). And curtailing a court’s sentencing discretion by requiring mandatory minimum sentences does not offend the separation of powers doctrine. United States v. Odeneal, 517 F.3d 406, 414 (6th Cir.2008).
If there is to be relief for the occasional defendant like Dylan Marshall for whom a mandatory minimum sentence “is excessive, unjust, and greater than necessary,” it must come from Congress. In March of this year, Senator Rand Paul introduced S. 619, the Justice Safety Valve Act of 2013, which would amend 18 U.S.C. § 3553 to add subsection (g), that would state: The legislation would require “[t]he court [to] state, in the written statement of reasons, the factors under subsection (a) that require imposition of a sentence below the statutory minimum.” S. 619, 113th Cong. § 2(g)(3). The Bill is co-sponsored by Senator Patrick Leahy. It appears that the intent of the Bill’s sponsors is to allow sentencing courts a broader measure of discretion and.give full effect to Congress’s stated sentencing goals reflected in section 3553(a). See Reevaluating the Effectiveness of Federal Mandatory Minimum Sentences: Hearing on S. 619 Before the S. Comm, on the Judiciary (2013) (Statement of Sen. Patrick Leahy) (referencing mandatory minimum sentences and acknowledging, “When I look at the evidence we have now, I realize we were wrong. Our reliance on a one-size-fits-all approach to sentencing has been a great mistake. Mandatory minimums are costly, unfair, and do not make our country safer.... Senator Paul and I believe that judges, not legislators, are in the best position to evaluate individual cases and determine appropriate sentences.”).
(1) General rule. — Notwithstanding any provision of law other than this subsection, the court may impose a sentence below a statutory minimum if the court finds that it is necessary to do so in order to avoid violating the requirements of subsection (a).
Senate Bill 619, however, is not the law at present. Until i1> — or legislation like it — is enacted, defendants like Dylan Marshall are out of luck. The mandatory five-year sentence imposed in this case is not unconstitutional, despite the defendant’s mental age, and under the applicable statutes, the district court was bound to impose it. For those reasons, I concur in the judgment affirming the sentence.